IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBORAH LYNN HORNSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv274-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review pursuant to 42 U.S.C. § 405 (g). Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .
>
> To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction.**  The plaintiff was 45 years old at the time of onset, (R. 22), and 49 years old at the time of the hearing before the ALJ. (R. 28-29). She has a twelfth grade education. (R. 29). The ALJ concluded that the plaintiff has severe impairments of "adhesive capsulitis and chronic pain due to possible fibromyalgia." (R. 18). Her prior work experience includes work as a security guard, veterinarian assistant, and garment

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

folder. (R. 22). The ALJ concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, he also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 22-23). Accordingly, the ALJ concluded that the plaintiff was not disabled. (R. 23).

  **B. Plaintiff's Claims.** As presented by the plaintiff, the two issues before the court are as follows.

> 1. The Commissioner's decision should be reversed, because the ALJ failed to issue a proper credibility finding.
>
> 2. The Commissioner's decision should be reversed, because the ALJ failed to give proper weight to the opinion of Dr. Jordan, Ms. Hornsby's treating physician.

(Pl's Br. at 6, doc. # 12). It is to these issues that the court now turns.

### IV. Discussion

  A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine

the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

**A. Credibility Finding**. As explained below, the ALJ did not fully credit Hornsby's testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the

alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

At the administrative hearing, Hornsby testified that she suffers from severe pain. (R. 30). The ALJ recited Hornsby's testimony and discussed the medical evidence. (R. 18-22). The ALJ acknowledged that Hornsby has "medically determinable impairments that could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. 20). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, a review of the ALJ's decision demonstrates that the ALJ properly considered and discredited Hornsby's testimony. Rather than give a synopsis, the court will quote it.

> The objective medical evidence indicates that the claimant suffers from adhesive capsulitis and chronic pain due to possible fibromyalgia, but the

claimant's treatment-seeking history, diagnostic test results, clinical signs, symptoms, medications and other prescribed treatment demonstrate that the claimant is able to perform some work activities. Specifically, the medical evidence indicates that the claimant has never been clearly diagnosed with fibromyalgia and her shoulder condition improved with both surgery and physical therapy.

For example, the claimant did not seek any medical treatment for either of these conditions prior to September 2007, when she visited the SARHA Doctors Center complaining of back pain and noting that she was "trying to get on disability for back." (Exhibit 4F). The claimant then visited Dr. Beverly F. Jordan, M.D., on October 31, 2007, complaining of neck, shoulder and chest pain with aches all over. However, on exam, the claimant had normal extremities and a lumbar x-ray revealed only slight scoliosis. (Exhibit 5F).

The claimant again complained of pain "all over" in the emergency room on November 2, 2007 (Exhibit 6F). However, on November 15, 2007, the claimant informed Mark B. Ellis, D.O., a disability physician, that she had been having pain in multiple areas for multiple years, inconsistent with her previous reports. She also informed Dr. Ellis that Dr. Jordan had diagnosed her with fibromyalgia, inconsistent with Dr. Jordan's objective records. On exam, the claimant had an essentially normal physical examination apart from some neck, chest, back and abdominal tenderness. Specifically, the claimant had full grip strength in each hand, no muscle spasms and the ability to walk with a normal gait. She could toe walk, heel walk and squat. Her spine had no abnormal curvature or spasms, and straight leg raising was negative bilaterally. She had a normal neurological examination and could maneuver around the room without difficulty (Exhibit 7F).

Dr. Jordan found the claimant had an unremarkable physical examination on December 10, 2007 (Exhibit 12F). In addition, the claimant did not complain of any left shoulder difficulties until January 31, 2008, when she visited Darrell Potter, M.D., complaining of loss of motion and pain in her left shoulder. On exam, the claimant had a loss of motion in her left shoulder, but she had no evidence of impingement and x-rays revealed no significant abnormality. Accordingly, Dr. Potter diagnosed the claimant with adhesive capsulitis (Exhibit 13F). Dr. Potter then performed a manipulation of the claimant's left shoulder on February 4, 2008 (Exhibit 13F). The claimant also started physical therapy on February 5, 2008 (Exhibits 13F and 24F).

>    \*       \*       \*
>
> Dr. Potter also found that the claimant had a good range of motion in her humeral joint on February 19, 2008, with no tenderness, muscle spasms or inflamation (Exhibit 13F). Dr. Jordan noted that the claimant was doing well, with no complaints on May 15, 2008. The claimant had a completely unremarkable physical examination on August 13, 2008 and she noted that her shoulder condition had improved on November 11, 2008, although she complained of pain. On exam, the claimant's shoulder lacked only the last ten degrees of flexion, abduction, internal rotation and external rotation. Her shoulder also had 4/5 strength according to Dr. Jordan (Exhibit 23F).
>
> A MRI of the claimant's left shoulder, performed on November 13, 2008, revealed only a possible very small partial thickness tear in her supraspinatus and was otherwise negative (Exhibit 24F). Accordingly, on November 20, 2008, Fleming G. Brooks, M.D., believed that the claimant's MRI did not reveal any rotator cuff pathology, and he diagnosed the claimant with left shoulder adhesive capsulitis (Exhibit 24F). The claimant reported continued improvement to Dr. Brooks on December 12, 2008 as well, and her range of motion had improved to where Dr. Brooks believed the claimant was making significant progress.

(R. 21-22).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

Relying on the treatment records, objective evidence, and Hornsby's own testimony, the ALJ concluded that her allegations regarding the extent of her pain were not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. However, the ALJ concluded that while Hornsby's underlying conditions are capable of giving rise to some pain, her impairments are not so severe as to give rise to the disabling intractable pain as she alleged.

The medical records support the ALJ's conclusion that while Hornsby's impairments could reasonably be expected to produce pain, Hornsby was not entirely credible in her description of her symptoms or her pain. Hornsby testified that Dr. Jordan had diagnosed her with fibromyalgia. (R. 38). Hornsby first saw Dr. Jordan on October 31, 2007, complaining of pain in her neck, shoulder and chest, and aching all over. (R. 324). At that time, Dr. Jordan diagnosed myalgias, arthralgias and "question fibromyalgia" as well as depression. (R. 325). Although Hornsby was wearing a brace for scolosis, an x-ray revealed only "slight s-shaped scoliosis." (R. 327). When Hornsby saw Dr. Jordan on December 10, 2007, she was not in distress, and her physical examination was unremarkable. (R. 390). While Dr. Jordan diagnosed her with fatigue and myalgias, she also referred Hornsby to a rheumatologist. (*Id.*) On February 11, 2008, Dr. Jordan diagnosed Hornsby with

9

fibromyalgia even though her examination did not include any tender points.[4]  On February 26, 1008, Dr. Pratt, a rheumatologist, indicated that Dr. Jordan had 'suggested' that Hornsby "might have fibromyalgia." (R. 405). Dr. Pratt indicated that while Hornsby had '[s]ome fibromyalgia-like features, [ ] [l]ikely more depressive overlay that she may appreciate." (*Id*.)

At no point during Hornsby's treatment does Dr. Jordan indicate that her diagnosis of fibromyalgia is based on a finding of tender points. In fact, in all of her treatment notes, although Hornsby complains of pain, Dr. Jordan notes that she is in "no acute distress." (R.389-90, 458, 480-82, 504)

Prior to seeking disability, Hornsby rarely sought medical treatment. For example, Hornsby asserts an onset date of April 10, 2006. (R. 29). Her medical records indicate that she complained on March 2, 2005 of chest pain, and she was diagnosed with bronchitis. (R. 236-40). On April 2, 2006, she complained of headache and chest pain. (R. 209-13). She was diagnosed with the flu. (*Id*.) On April 10, 2006, and June 5, 2006, she complained of congestion and was diagnosed with sinusitis. (R. 309-10). It was only in 2007 when she

---

[4] A diagnosis of fibromyalgia is usually only made after other diagnoses have been ruled out and to meet the diagnostic criteria, a patient must have at least 11 of 18 tender points on all four quadrants of the body. *See* http://www.fibromyalgia-symptoms.org/fibromyalgia_diagnosis.html (last visited on Feb. 13, 2012).

Hornsby underwent a consultative examination on November 15, 2007. She advised Dr. Ellis that she was applying for disability due to her fibromyalgia. (R. 339). During the examination, she "complains of pain in multiple areas." (R. 340). While she had some tenderness, Dr. Ellis noted that Hornsby "complains of pain with palpation over the muscles of the arms and the legs bilaterally. Essentially anywhere I touch on these she says is painful." (R. 341). Dr. Ellis's impression was "[p]ain in multiple areas, per patient she has a diagnosis of Fibromyalgia." (*Id*.) The problem with this assessment is at the time of the evaluation, Dr. Jordan had not yet diagnosed Hornsby with fibromyalgia.

began to complain about overall body and shoulder pain. The frequency with which Hornsby sought medical treatment and the timing of her complaints militates against her credibility. *See Dyer*, 395 F.3d at 1211-12. The ALJ's reasons and conclusions that Hornsby's testimony is inconsistent with the medical records are sufficient to support his credibility conclusion which the court will not disturb.

To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**B. Treating Physician's Opinion**. Hornsby also argues that the ALJ improperly rejected her treating physician's opinion about the severity of her limitations. In essence, the plaintiff argues that if the ALJ accepted Dr. Jordan's assessment about her physical impairments and pain, she would be disabled. (Pl's Br. at 10, doc. # 12). Hornsby did not begin seeing Dr. Jordan until October 31, 2007. (R. 324-25). At that time, Hornsby complained of pain and body aches. (R. 324). Dr. Jordan diagnosed myalgias, arthralagias, possible fibromyalgia and prescribed Cymbalta. (R. 325). On December 10, 2007, Hornsby complained that she could not tolerate the Cymbalta, and she "just feels bad and aches all over." (R. 390). Dr. Jordan referred her to a rheumatologist and prescribed Coenzyme. (*Id.*) On February 11, 2008, Dr. Jordan noted, under chief complaint, that

> [Hornsby] comes in today to discuss her fibromyalgia. She is applying for Social Security disability for this and has several forms we need to fill out. She is in constant pain and is unable to work because of this. She is applying for disability. Her husband's neurologist recommended that we try Topamax. We will certainly do that.

(R. 389). Dr. Jordan completed a clinical assessment of pain form describing Hornsby's level of pain. (R. 387). According to Dr. Jordan, "[p]ain is present to such an extent as to be distracting to adequate performance of daily work activities." (*Id*.) Physical activity will [g]reatly increase[] pain and to such a degree as to cause distract from tasks or total abandonment of task." (*Id*.)

In addition, Dr. Jordan completed a physical capacities evaluation in which she opined that Hornsby would be absent from work more than four days a month because she has "fibromyalgia and is in constant pain." (R. 388).

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Jordan because her treatment records do not support her assessment that Hornsby suffers from

13

intractable unrelenting pain. (R. 21)

> On February 11, 2008, Dr. Jordan opined that the claimant had pain present to such an extent as to be distracting to adequate performance of work, with distraction from tasks or total abandonment of tasks. She also believe (sic) that, although the claimant could lift ten pounds occasionally, the claimant could not stay in one position for more than thirty minutes and would miss more than four days of work per month due to her impairment, among other limitations. However, the undersigned gives this opinion little weight, as it is inconsistent with the objective medical evidence of record and Dr. Jordan's own objective medical findings on exam. For example, on that same date, Dr. Jordan found the claimant had a completely unremarkable physical examination, and she appeared well-developed and well-nourished with no acute distress (Exhibit 12F).

(R. 21)

The ALJ's determination is supported by substantial evidence. In her initial disability report, Hornsby indicated that she stopped working on April 10, 2006 due to disabling scoliosis and pinched nerve. (R. 133). However, an x-ray on October 31, 2007, revealed 'slight' scoliosis. (R. 327). Hornsby completed a daily activities questionnaire indicating that she is able to care for her personal needs without assistance; she shops every two weeks; and she has no difficulty paying attention or concentrating. (R. 153-56). It is clear that Dr. Jordan's treatment notes reflect Hornsby's complaints as told to her by Hornsby. Even Dr. Jordan's diagnosis of fibromyalgia is not supported by evidence of tender points. Her treatment notes do not support the level of pain Dr. Jordan attributes to Hornsby.

The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the medical records for evidence supporting Dr. Jordan's assessment

of the severity of Hornsby's pain.  Dr. Jordan's assessment is based on the plaintiff's own self-reports.  Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Jordan's opinion that Hornsby suffers from disabling pain.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 14th day of February 2012.

                      /s/Charles S. Coody
                  CHARLES S. COODY
                  UNITED STATES MAGISTRATE JUDGE